829 So.2d 579 (2002)
Dilia Montoya Wife of/and Christopher A. PALGRAVE
v.
Janet GROS Wife of/and Jerry Gros.
No. 02-CA-249.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2002.
*580 Marcus L. Giusti, Hannan, Drake & Giusti, Metairie, LA, for Dilia Montoya wife of/and Christopher A. Palgrave, for Plaintiffs-Appellants.
Robert B. Evans III, Burgos & Evans, L.L.C., New Orleans, LA, for Janet Gros wife of/and Jerry Gros, for Defendants-Appellees.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
*581 WALTER J. ROTHSCHILD, Judge.
Plaintiffs appeal from the trial court's ruling granting defendant's exception of prescription for non-use of a servitude. For reasons which follow, we affirm the judgment of the trial court.
Facts and Procedural History
This matter has been extensively litigated between the parties. In 1980, plaintiffs, Dilia and Christopher Palgrave, purchased three lots near Bayou Barataria in Jefferson Parish from A & T partnership. At the time of the sale, A & T granted the Palgraves a right to use a portion of their property referred to as Lot 1 Square 2 as a means of ingress and egress to Bayou Barataria. In 1981, A & T sold Lot 1 Square 2 to defendants, Janet and Jerry Gros, without advising them of the permission which had been previously granted to the Palgraves. Several lawsuits were filed as a result of these transfers.
As a result of this litigation, a servitude of passage was awarded to the Palgraves by the trial court, and this ruling was affirmed by a panel of this court in Palgrave v. Tallieu, 508 So.2d 97 (La.App. 5th Cir.1987). The extent of the servitude was not addressed at that time; however, the court stated as follows:
We hold that the Palgraves are entitled to a servitude sufficient to allow them to bring their boats in and out of Bayou Barataria but that their servitude must be exercised with the least possible inconvenience and disruption to Gros.
After the rendition of this opinion, the parties entered into a dispute concerning the location and extent of the servitude. By consent judgment signed by the trial court on June 14, 1990, the parties agreed as follows:
The parties have reached an agreement regarding the extent of the servitude granted to plaintiffs across Lot 1, Square 2, Murphy Subdivision.
THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that there by [sic] judgment herein recognizing a servitude of passage across Lot 1, Square 2 Murphy Subdivision, in favor of Lots 10, 11, and 12 of Square 1, Murphy Subdivision.
IS [SIC] IS FURTHER ORDERED, ADJUDGED AND DECREED that said servitude shall be located along the right hand side of Lot 1, Square 2 (i.e. adjacent to Lot 2, Square 2, or as close to the right hand side as applicable zoning restrictions permit.) The servitude shall be twelve feet wide from front to back, it being understood that additional space may be required near the road to back a trailered boat into Lot 1, Square 2 from Barataria Road and use the twelve foot wide servitude strip running from front to back. Each party shall bear its own costs.
However, this judgment contained an incorrect caption and docket number, and the parties subsequently submitted an amended judgment bearing the correct information which was signed by the trial court on September 25, 1990.
By letter dated September 18, 2000 to the Palgraves' attorneys from the attorney for Mr. and Mrs. Gros, the Gros informed the Palgraves that the servitude created on June 14, 1990 had prescribed by their non-use for a period of ten years, and that anyone entering the premises would be considered a trespasser and removed from the property.
On September 22, 2000, the Palgraves commenced these proceedings by filing a Petition for Permanent Injunction, seeking to prevent defendants from hindering the full use and exercise of the servitude in favor of the Palgraves. Defendants responded to this petition with an exception *582 of prescription for non-use alleging that the servitude had prescribed due to the Palgraves' failure to use the servitude for a period of over ten years.
Following a hearing on January 26, 2001, the trial court granted defendant's exception of prescription. Upon the Palgraves' motion for new trial, the trial court issued an amended judgment on October 3, 2001 granting the defendant's exception and dismissing the Palgraves' petition and cause of action with prejudice. The trial court did not assign reasons for judgment. This appeal followed.

Law and Discussion
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646. A servitude of passage, which is a type of predial servitude, is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and mode of its existence shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. C.C. art. 705. If the title does not specify the location of the servitude, the owners of the servient estate shall designate the location. La. C.C. art. 750.
A predial servitude is extinguished by nonuse for ten years. La. C.C. art. 753. Prescription of nonuse begins to run for an affirmative servitude from the date of last use. La. C.C. art. 754. An essential element of proof in an action involving prescription of nonuse for ten years under La.C.C. Art. 753 is that the servitude was in fact not used for any purpose consistent with its grant. See, Ashland Oil Company, Inc. v. Palo Alto, Inc., 615 So.2d 971, 973-974 (La.App. 1st Cir.1993), and cases cited therein. Prescription of nonuse is subject to the general rules regarding suspension and interruption of prescription.
The servitude in this case was created in the 1980 Act of Sale between the A & T Partnership and the Palgraves. The title was silent as to the precise extent and location of the servitude. The servitude was judicially designated as a servitude of passage in 1987. Further, in 1990, the parties entered into a consent agreement as to the location and extent of the servitude. Thus, the description of the servitude of passage did not become apparent until the parties agreed to the location.
By their exception of prescription, the Gros contend that the Palgraves failed to use the property for a period in excess of ten years, and thus, the servitude prescribed due to nonuse prior to the institution of these proceedings. The Palgraves filed suit on September 22, 2000. At issue is whether the prescriptive period for calculating nonuse began from the date of the signing of the original consent judgment, June 14, 1990, or from the date of the amended judgment, September 25, 1990. The consent judgment in the present case was amended to correct the name and caption which appeared on the original judgment. The amended judgment did not alter any of the substance of the judgment; rather, the judgment was amended to correct typographical errors that appeared in the caption of the document.
A consent judgment is, in effect, a bilateral contract between the parties which gets its binding force from the consent the parties gave, rather than from adjudication by the courts. Ortego v. State, Dept. of Transp. & Development, 95-830 (La.App. 3 Cir. 4/24/96), 673 So.2d 1168, rev'd on other grounds, 689 So.2d 1358 (La.1997). As evidenced by the consent judgment signed on June 14, 1990, the parties agreed on the location and extent of the servitude in question in this case. *583 Although that judgment contained a typographical error in the caption which was subsequently corrected by the amended judgment, the original judgment nevertheless represents an agreement between the parties as to this issue. Thus, prescription begins to run from the point at which the parties specified the extent and location of the servitude, which in this case is June 14, 1990.
The servitude in this case granted the Palgraves the right of ingress and egress to the bayou and the right to bring their boats in and out of Bayou Barataria. At trial, Mrs. Palgrave admits that since the granting of the servitude, she and her husband have not brought a boat onto the servient estate as authorized by the servitude.
Appellants contend, however, that they were prevented from exercising the servitude because of the obstacles placed on the property by the Gros. Further, appellants contend that they walked over the servitude on several occasions between June of 1990 and the time of the filing of suit which interrupted the running of prescription against them.
La. C.C. arts. 744 and 745 provide that as owners of the dominant estate, the Palgraves had the right to make repairs for use and preservation of the servitude at their expense. La. C.C. art. 755 provides that prescription will be suspended where the owner of the dominant estate is prevented from using the servitude by an obstacle that he can neither prevent nor remove.
At the hearing on defendants' exceptions, Mrs. Palgrave testified that she and her husband were unable to use the servitude because of several obstacles which prevented transporting or launching a boat from the designated area. Mrs. Palgrave stated that a tree and other debris on the property, including parts of an old boat, prevented their access to the property. She introduced several photographs which depicted these obstacles on the property. Appellants contend that it was not possible to launch a boat from the servitude due to these obstacles, and thus prescription did not commence to run. Alternatively, they argue that prescription was suspended while the obstacles prevented use of the servitude.
However, the Palgraves failed to introduce any evidence to show that they attempted to remove the obstacles on the servient estate. Although the law allows the owners of the dominant estate to make repairs and remove obstacles for the use and preservation of the servitude, there is nothing in the record to show that appellants were prevented from entering the property to remove the obstacles. In fact, the testimony produced at the hearing indicates that the Palgraves did not request that the Gros remove the obstacles. Under these circumstances, we fail to find that the Palgraves were not prevented from using the servitude due to the obstacles on the property, and prescription commenced to run from the creation of the servitude.
Secondly, appellants contend that their actions in walking across the servient estate is a use of the servitude sufficient to interrupt prescription. In support of their position, the Palgraves submitted a list of numerous occasions when they visited the property during the period from 1990 when the location of the servitude was designated until the year 2000 when this suit was instituted. Based on our review of the record before us, we find no merit in appellant's argument that their actions in walking across the property constituted a use of the servitude.
La. C.C. art. 761 provides that the use of a right that is only accessory to the servitude *584 is not use of the servitude. In this case, the purpose of the servitude was to allow the Palgraves ingress and egress through the property to bring their boats to Bayou Barataria. Even assuming that they walked across the property, this action does not constitute a use of the servitude unless they also attempted to bring a boat across the property to access the bayou. The passage is merely accessory to the right of ingress and egress to enter the bayou. See, Revision comment (b) to La. C.C. art. 761.

Conclusion
Accordingly, for the reasons stated herein, we find that the trial court was correct in determining that the servitude of passage granted to the Palgraves was not used for a period in excess of ten years, and the servitude has therefore prescribed. The judgment of the trial court granting defendants' exception of prescription is therefore affirmed. Appellants are to bear all costs of this appeal.
AFFIRMED.